## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JESSE R. SNELSON** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-520** |
| | § | |
| **CUTTER HOLDING CO. d/b/a CUTTER** | § | |
| **AVIATION; METROPOLITAN LIFE** | § | |
| **INSURANCE COMPANY d/b/a METLIFE** | § | |
| | § | |
| **Defendants.** | § | |

## COMPLAINT

Plaintiff Jesse R. Snelson brings this Complaint against his former employer Cutter Holding Co. d/b/a Cutter Aviation and against Metropolitan Life Insurance Company ("Liberty Mutual") for violations of his ERISA rights.

### I.

### Parties, Jurisdiction, and Venue

1.      Plaintiff is an individual, a former employee of Cutter Holding Co., and a beneficiary of a group disability benefits policy administered by Defendant Metropolitan Life Insurance Company for the benefit of employees of Defendant Cutter Holding Co.

2.      Defendant Cutter Holding Co. ("Cutter Aviation") is an Arizona corporation that can be served through its Registered Agent, CT Corporation System, 1999 Bryan Street - Suite 900 Dallas, TX 75201-3136 USA

3.      Cutter Aviation is an aircraft sales and service company that operates and employs staff in Addison, Texas at the Addison Municipal Airport.

4.     Defendant Metropolitan Life Insurance Company ("MetLife") is a New York corporation that does business in the State of Texas. MetLife can be served at its local office 5400 Lyndon B Johnson Fwy, Dallas, TX 75240.

5.     MetLife is licensed to sell insurance and act as a third party administrator of employer health and welfare benefit plans in the State of Texas.

6.     Jurisdiction is proper on the ground of the existence of a federal question under 28 U.S.C. § 1331 based on Plaintiff's claims under the Employee Retirement Income Security Act, 29 U.S. C. §1001 et seq. ("ERISA").

7.     Venue is proper in the Northern District of Texas, Dallas Division pursuant to 29 U.S.C. § 1132(e) (2) because both Defendants can be found in Dallas County.

## II.

### Facts

8.     On June 3, 2020, Defendant Cutter Aviation extended an offer of employment to Plaintiff Jesse R. Snelson.

9.     Among other items, the offer of employment advised Snelson that he would become eligible for a comprehensive benefit package including short-term disability benefits on the 1st of the month following 60 days of employment.

10.     This paragraph of the offer letter read as follows:

- A comprehensive benefits package is available: group health, dental, vision, STD, and LTD are available the 1st of the month following your initial 60 days of employment.

11.     Cutter Aviation does in fact have a short-term disability policy that covers eligible employees as of the 1st of the month following 60 days of employment

12.     The Metropolitan Life Insurance Company short-term disability benefits policy sponsored by Cutter Aviation contains the following statement regarding employee eligibility:

COMPLAINT                                                                 Page 2

You will be eligible for insurance on the later of:

1. August 01, 2017; and
2. the first day of the month coincident with or next following the date You complete the Waiting Period of 60 days.

If You enter an eligible class after August 01, 2017, You will be eligible for insurance on the first day of the month coincident with or next following the date You complete the Waiting Period of 60 days.

**Waiting Period** means the period of continuous membership in an eligible class that You must wait before You become eligible for insurance.  This period begins on the date You enter an eligible class and ends on the date You complete the period(s) specified.

13.     Snelson began working for Cutter Aviation on June 29, 2020 as a "Special Programs Pilot."

14.     Snelson completed his first 60 days of employment on August 28, 2020.

15.     Snelson therefore also satisfied the 60 day Waiting Period necessary to become eligible for short-term disability benefits on August 28, 2020.

16.     Per the terms of the policy, Snelson became eligible and covered by Cutter Aviation's short-term disability benefits policy on September 1, 2020, the first day of the month following the date he completed his 60 day Waiting Period.

17.     On September 15, 2020, Snelson notified the company that he needed an emergency disc fusion surgery.

18.     On that same day, Snelson turned in a doctor's note restricting him to light duty.

19.     On that same day, Snelson also asked Cutter Aviation's HR Director Heather Wahl about applying for short-term disability benefits.

20.     Up through that date, Snelson had been working full-time out of Cutter Aviation's Addison, Texas office, spending the majority of his work hours teaching a Private Pilot Ground School, which was sedentary office/Zoom work and did not require flying.

21.     Cutter Aviation could have easily and without any undue hardship on its business allowed Snelson to continue performing this sedentary office/Zoom work that did not require flying

COMPLAINT                                                                              Page 3

after September 15, 2020.

22.      Cutter Aviation also could have easily and without any undue hardship granted Snelson a short-term leave of absence to undergo his disc fusion surgery and then return to work.

23.      In fact, a Cutter Aviation administrator, Annie Moreno, who had routinely assisted Snelson in navigating Cutter Aviation's official processes, began working to accommodate Snelson after learning of his need for surgery.

24.      Moreno quickly found a pilot to cover the one upcoming flight that Snelson had on his work schedule.

25.      On September 16, 2020, however, Wahl instructed Ms. Moreno to stop communicating with Snelson about these accommodations.

26.      Wahl then telephoned Snelson and terminated his employment over the phone.

27.      On the call, Snelson asked Wahl if he could keep doing office work and she said "no."

28.      At the time she fired Snelson, Wahl believed that terminating Snelson's employment would also terminate his short-term disability benefits coverage and preclude him from receiving short-term disability benefits.

29.      On October 2, 2020, Wahl admitted to holding this belief in an e-mail she sent to Snelson in response to his request that Cutter Aviation complete the Employer portion of the short-term disability benefits application.

30.      Specifically, Wahl stated the following in her October 2, 2020 e-mail to Snelson:

Good Morning Jesse,

You do not have short term disability any longer, as you are no longer an employee of Cutter Aviation.  This is a benefit of current employees only, therefore, terminated when your employment terminated.  Are you wanting to file a short term claim for a period when you were still employed?  The process of short term is opened by the employer, not the employee.  So I would have to start the process.

Please advise.

Heather Wahl, PHR
Human Resources Director

31.     A motivating factor in Wahl's decision to immediately terminate Snelson's employment on September 16, 2020 was to interfere with his receipt of short-term disability benefits.

32.     Wahl proceeded to push back against Snelson's request for short-term disability benefits on October 2, 2020, sending Snelson a second e-mail trying to convince Snelson that no benefits would be payable to him because he hadn't been absent from work at any point prior to his termination.

33.     Wahl only completed the Employer portion of Snelson's short-term disability benefits paperwork after Snelson pointed out that it was MetLife, not Cutter Aviation, that should be making the decision whether to approve him for short-term disability benefits or not.

34.     Initially, MetLife approved Snelson's short-term disability benefits claim.

35.     On November 25, 2020, MetLife issued a letter stating that it had approved Snelson's short-term disability claim through December 22, 2020.

36.     On November 25, 2020, MetLife issued Snelson payment for short-term disability benefits from October 2, 2020 through November 25, 2020.

37.     MetLife's approval of Snelson's short-term disability claim was consistent with the policy's terms and provisions, which provide for ongoing coverage if someone becomes disabled while covered by the policy even if their active employment ends after that date.

COMPLAINT                                                                                                    Page 5

38.     On January 7, 2020, Snelson and Cutter Aviation participated in a confidential mediation before the Texas Workforce Commission Civil Rights Division regarding a Charge of Discrimination Snelson had filed against Cutter Aviation for failing to accommodate his disability and instead terminating his employment.

39.     On the evening of January 7, 2020, Snelson then received a telephone call from MetLife stating that MetLife would be denying his benefits claim based on information received from Wahl in December 2020.

40.     Wahl had received a copy of Snelson's TWC Charge of Discrimination from the TWC Civil Rights Division on November 16, 2020.

41.     The information provided by MetLife to Snelson over the telephone indicated that Wahl had specifically reached out to MetLife with the intent of interfering with Snelson's already approved short-term disability benefits claim in December of 2020 after she learned Snelson had filed a Charge of Discrimination against Cutter Aviation.

42.     On January 8, 2020, Snelson sent an e-mail to MetLife requesting a complete copy of his claims file.

43.     On January 12, 2020, Snelson's attorney Christine Hopkins notified MetLife via an e-mail sent to tampa@metlife.com that she would be representing Snelson in the short-term disability benefits matter and re-iterated Snelson's request for a complete copy of his claims file and all other information Snelson was entitled under ERISA to receive from MetLife upon his written request.

44.     Hopkins also telephoned the claims center on January 13, 2021 to confirm that MetLife had received the notice of representation and request an update on the status of the claim.

45.     Without ever contacting Snelson's legal representative to discuss the claim or give an update about the claim, MetLife proceeded to reverse its prior decision to approve Mr. Snelson's

COMPLAINT                                                                                    Page 6

claim on January 16, 2021.

46.     On January 16, 2021, MetLife issued a letter to Snelson demanding repayment of all benefits previously issued to Snelson.

47.     Other than a general statement that MetLife had found Snelson ineligible for benefits, MetLife's January 16, 2021 letter did not explain the reasoning behind its reversal of its prior favorable benefits determination, did not cite to any specific policy provisions that it relied on when reversing its prior decision, did not advise Snelson of his ERISA rights, and did not advise Snelson that he had any right to appeal the decision nor provide instructions on how to appeal the decision.

48.     Instead, the January 16, 2021 letter advised Snelson that the overpayment matter had already been turned over to MetLife's "payment recovery vendor" Brown & Joseph, LLC.

49.     On January 21, 2021, Brown & Joseph, LLC sent a collections notice on behalf of MetLife to Snelson stating that Brown & Joseph, LLC would convert the debt into a judgment within 30 days if Snelson did not dispute the debt within 30 days.

50.     Under the short-term disability benefits policy, Snelson was supposed to have 180 days from the date of the January 16, 2021 adverse benefit determination to appeal the determination to MetLife.

51.     Brown & Joseph, LLC's letter instead gave Snelson only 30 days from January 21, 2021 to contest the "debt."

52.     Like MetLife's prior letter, Brown & Joseph, LLC's letter did not explain the reasoning behind MetLife's reversal of its prior favorable benefits determination, did not cite to any specific policy provisions that it relied on when reversing its prior decision, did not advise Snelson of his ERISA rights, and did not advise Snelson that he had any right to appeal the decision nor provide instructions on how to appeal the decision.

COMPLAINT                                                                                    Page 7

53.     On January 27, 2021, Snelson's attorney sent a letter to MefLife informing MetLife that it was in violation of ERISA's regulations.

54.     The January 27, 2021 letter to MetLife asked MetLife to issue an adverse benefit determination that complied with ERISA regulation 2950.503-1.

55.     More than 30 days have passed since Snelon made his written request for a copy of his claims file.

56.     More than 30 days have passed since Snelson's attorney re-iterated Snelson's written request for a copy of his claims file in her January 12, 2021 e-mail and January 27, 2021 letter.

57.     More than 30 days have passed since Snelson's attorney requested an ERISA compliant adverse benefit determination letter.

58.     MetLife has failed to provide Snelson a copy of his claims file.

59.     MetLife has failed to provide Snelson an ERISA-compliant adverse benefit determination letter.

60.     Instead, the only letter Snelson has received is a demand for subrogation information from MetLife's subrogation vendor Equian/Trover.

61.     Plaintiff incorporates all of the facts set forth above in his causes of action set forth below.

62.     Plaintiff reserves his right to later amend this Complaint and/or file a state court Petition on his additional Americans with Disabilities Act and TCHRA claims against Defendants once he has exhausted his administrative remedies on those claims.

### III.

### Count One – Section 510 Interference & Discrimination Claim

### (against Defendant Cutter Holding Co.)

63.     Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan…or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan…"

64.     Cutter Holding Co. discharged Plaintiff Jesse R. Snelson for exercising his right to file a claim for short-term disability benefits under Cutter Aviation Welfare Benefit Plan.

65.     Cutter Holding Co. discharged Plaintiff Jesse R. Snelson for the purposes of interfering with Snelson's attainment of the short-term disability benefits he was entitled to receive under the Cutter Aviation Welfare Benefit Plan.

66.     Plaintiff Jesse R. Snelson was at all times qualified to perform the job he was terminated from with reasonable, short-term accommodations.

67.     ERISA section 502 authorizes this Court to order Cutter Holding Co. to reinstate Plaintiff Jesse R. Snelson to the job he held prior to his unlawful termination and to award Plaintiff back and/or front pay as a form of equitable relief and reasonable attorneys fees and costs.

68.     Plaintiff respectfully requests the Court to reinstate his employment, grant him back and front pay, and award him reasonable attorney fees and costs.

### Count Two – Denial of ERISA Benefits

### (against both Defendants)

69.     Defendants Cutter Holding Co. and Metropolitan Life Insurance Company wrongfully denied Plaintiff Jesse R. Snelson short-term disability benefits due to him under the Cutter Aviation Welfare Benefit Plan and Group Policy # KM 05945705-G.

70.     Defendants are accordingly liable under 29 U.SC. § 1132(a)(l)(B) for all short-term benefits due but not paid to Plaintiff under the short-term disability benefits policy, prejudgment interest thereon and Plaintiff's reasonable attorney fees and expenses and costs of court.

## Count Three – Breach of Fiduciary Duty

## (against Defendant Metropolitan Life Insurance Company)

71.     Defendant Metropolitan Life Insurance Company ("MetLife") breached its fiduciary duty to Plaintiff under ERISA.

72.     MetLife rescinded and cancelled its prior approval of Snelson's short-term disability benefits claim knowing that there was not any provision in the policy supporting its decision.

73.     MetLife's rescission and cancellation of Snelson's past benefits also meant that Snelson stopped receiving the monthly short-term benefit checks that he was relying on to pay his living expenses following Cutter Holding Co.'s termination of his employment.

74.     In rescinding, cancelling and termination Snelson's short-term disability benefits, MetLife violated the requirements of 29 C.F.R.   § 2560.503-1(b)(5)   that   benefit   claim determinations be made in accordance with governing plan documents and that plan provisions be  applied  consistently  with  respect  to  similarly  situated  claimants.

75.     MetLife knew at the time that it made its adverse benefit determination that ERISA regulation 29 C.F.R. § 2950.503-1(m)(4) required MetLife to send Snelson an ERISA-compliant adverse benefit determination notice containing specific information that would aid Snelson in appealing the denial of his benefits.

76.     MetLife knew that ERISA regulation 29 C.F.R. § 2950.503-1(d) and ERISA regulation (g)(i), (ii), (iii), (iv), (vii)) specifically required that MetLife send Snelson an adverse

benefit determination that included:

    **(i)**      The specific reason or reasons for the adverse determination;

    **(ii)**     Reference to the specific plan provisions on which the determination is based;

    **(iii)**    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

    **(iv)**    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review; and

    **(vii)**   In the case of an adverse benefit determination with respect to disability benefits -

    **(C)**    Either the specific internal rules, guidelines, protocols, standards or other similar criteria of the plan relied upon in making the adverse determination or, alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the plan do not exist; and

    **(D)**    A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

77.    Instead, MetLife then sent Snelson a letter simply demanding repayment of the previously issued benefits.

78.    MetLife's letter failed to advise Mr. Snelson of the specific reason for MetLife's rescission and cancellation of the previously paid benefits.

79.    MetLife's letter failed to reference any plan or policy provision supporting the rescission and cancellation of the previously paid benefits.

80.    MetLife's letter failed to describe any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

81.    MetLife's letter failed to inform Snelson about the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

COMPLAINT                                          

82.     MetLife's letter failed to either the specific internal rules, guidelines, protocols, standards or other similar criteria of the plan relied upon in making the adverse determination or, alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the plan do not exist;

83.     MetLife's letter failed to advise Snelson that he was entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

84.     MetLife then immediately sent the matter to a collections agency, Brown & Joseph, without advising Snelson of any of his rights under ERISA or allowing Snelson the opportunity to appeal the decision.

85.     Despite receiving a letter from Snelson's attorney with a signed authorization form granting MetLife permission to communicate with Snelson's attorney about the claim, MetLife refused to return any of the phone calls, e-mails, or letters that Snelson's attorney sent in an attempt to get MetLife to comply with ERISA's regulations.

86.     MetLife failed to provide Mr. Snelson a copy of his claims file within 30 days of Snelson's written request for his claims file.

87.     MetLife knew that failing to provide Snelson a copy of his claims file would prejudice Snelson's a full and fair opportunity to appeal of MetLife's adverse benefit determination within the time limits set forth by the policy.

88.     MetLife chose to violate Snelson's ERISA rights for its own financial gain and chose to put its own interests and the interests of its client, Cutter Holding Co. above Snelson's interests as a beneficiary of the policy.

COMPLAINT                                                                                          Page 12

89.     As a result of Defendant MetLife's breach of its fiduciary duties to Plaintiff, Plaintiff has suffered actual harm, including the loss of benefits to which he was otherwise entitled, the denial of a full and fair claims appeal process, and the incurring of attorney fees and costs to file this lawsuit to force MetLife to do the right thing by its beneficiary.

90.     Plaintiff requests that this Court grant him equitable relief of surcharge, of estoppel and waiver to prevent MetLife from denying Snelson's benefits due to its failure to disclose any valid reason or policy provision that supports the denial and the fact no such valid reason or policy exists, estoppel and waiver to prevent MetLife from arguing Snelson was required to exhaust his administrative remedies under ERISA prior to filing this suit as MetLife denied Snelson the information necessary for him to avail himself of MetLife's internal appeal process and due to the prejudice caused by MetLife's multiple violations of ERISA's claim handling regulations, reformation of any ambiguous policy provisions or interpretations that MetLife may attempt to use against Snelson, and/or a remand requiring MetLife to follow the policy provisions and comply with all ERISA regulations on remand.

WHEREFORE, Plaintiff prays this Court grant him judgment against Defendants for all appropriate relief available to him under ERISA.

Dated: March 8, 2021                          Respectfully submitted,

                                              TREMAIN ARTAZA PLLC

                                              */s/ Christine A. Hopkins*
                                              Christine A. Hopkins
                                              Texas State Bar No. 24095768
                                              13140 Coit Rd., Ste 104
                                              Dallas, TX 75240
                                              christine@tremainartaza.com
                                              Telephone:  469-573-0297
                                              Facsimile:  214-254-4941

                                              **ATTORNEY FOR PLAINTIFF**